R. J. LEWIS, Sheriff, v. JOHN F. DUGAR.

*Drummers—License to sell must be in their actual possession to relieve from Penalty.*

A drummer is not protected from the penalty denounced by statute against persons selling goods without license, unless he shall be in the *actual* possession of the license while doing business. Acts 1883, ch. 136, § 28. (In this case the license was mailed to defendant but not received by him at the time the sale was made).

CIVIL ACTION, tried at Spring Term, 1884, of HALIFAX Superior Court, before AVERY, J.

This action, in which the state was joined as plaintiff, was begun before a justice of the peace, to recover from the defendant the penalty of $200, imposed by the statute, (ch. 136, § 28, of the acts of 1883) on "drummers," for selling goods by the wholesale without first having paid to the treasurer a tax of $100, and obtained a license authorizing him to so sell, &c.

The section of the statute cited, among other things, requires that every person acting as a "drummer" in his own behalf, or for another person or firm, who shall sell, or attempt to sell, goods, wares or merchandise of any description by wholesale, with or without samples, before soliciting orders, or making any such sales, shall pay the treasurer of the state a tax of $100 and obtain a license, which shall be effective for a year next after its date. It further provides, that if any person shall violate such provisions and requirements, he "shall be fined not exceeding fifty dollars, or imprisoned not exceeding thirty days, and shall forfeit and pay besides, two hundred dollars to the sheriff, to be collected by distress or otherwise, one-half of which shall be accounted for as other taxes, the other half to the use of the officer making the arrest; and it shall be the duty of

all county and township bonded officers to prosecute for penalties under this section. The mayor, or any bonded officer of any town or city, shall have power to make arrests under this section, and collect the fine and penalty. The license issued under this section shall not be transferrable, but may be used by any agent in the service of the principal and not by *more than one person at one time, and shall be in the possession of the person while doing business under this section in this state to secure his protection.*

The treasurer of the state shall be authorized to issue a duplicate license in any case where the original is lost or destroyed upon an affidavit setting forth such fact.

It appears from the record that the plaintiff, Robert J. Lewis, was the sheriff of Halifax county on the 16th day of August, 1883, and so continued to be for several months next thereafter.

The defendant, during the whole of the said month of August, was a travelling salesman in this state for the business firm of A. Rosenstock & Co., of Petersburg, in the state of Virginia, wholesale dealers in dry goods and notions.

On the 14th day of August, 1883, the said firm wrote a letter to the treasurer of this state, applying for a license to sell goods under the statute above mentioned, and enclosing $100 to pay the taxes required to entitle them to have such license, and requesting that the license be sent at once to the defendant at Enfield, in this state. The treasurer received the letter and the money on the 16th of August, 1883, and at once granted the license as applied for, and enclosed the same in a letter addressed to the defendant at Enfield, and the letter was deposited in the postoffice in Raleigh at 2 o'clock p. m. of the last mentioned day.

The firm notified the defendant at Enfield that the license would be sent to him there, and he expected to receive it the last mentioned day, and waited until the last post of that day arrived. Failing to receive the license, he offered

2

for sale and sold for said firm in the afternoon of said last named day certain goods by wholesale. At 5 o'clock p. m. of last mentioned day the plaintiff, as sheriff of Halifax county, demanded of the defendant that he exhibit to him his license authorizing the sale of goods he had so made.

The defendant failed to exhibit any license at the time; indeed, he had none in his possession. Soon after that time, however, he received the license and exhibited it to the sheriff, before this action was brought to recover the penalty of $200 imposed by the statute cited above.

Upon this state of facts, submitted to the court by consent of parties, the court was of opinion that the plaintiff was not entitled to recover, and gave judgment for the defendant, and the plaintiff appealed.

*Messrs. Mullen & Moore,* for plaintiff.
*Mr. R. O. Burton, Jr.,* for defendant.

MERRIMON, J., after stating the above. At first we were strongly inclined to think that the principals of the defendant having paid the taxes required, and the license having been granted and mailed to the defendant at Enfield, before he sold the goods, he had not incurred the penalty prescribed. But upon more matured reflection, we are satisfied that such a construction of the statute would not effectuate the legislative intent.

The language of the statute is, that " any person *violating the provisions* of this paragraph," &c. Now, one of its provisions is, that " the license issued under this section shall not be transferrible, but may be used by one agent in the service of the principal, and not more than *one person at one time, and shall be in possession of the person while doing business under this section in this state to secure his protection.*"

This is a very material clause; it contains substantial and

essential provisions. Among other things, it requires that the license "shall be in the *possession of the person while doing business.*"

This does not imply merely a constructive possession, but an actual possession of the license at the time of the sale, or offering to sell, the purpose being by having the license present to cut off, as far as practicable, the possibility that two or more agents might at the same time sell goods under the same license at different places and escape the penalty. But for this requirement that the party selling shall have actual possession of the license, it would be practicable for two or more agents to use the license for selling goods at the same time at different places. If the person or firm obtaining a license should have two or more agents, each *might* fraudulently employ it for "his protection." Thus, upon demand of the sheriff or other officer, to see the license, the agent then selling, or offering to sell, might say that he had a license; that he had by inadvertence or accident, left it at a distant point on a railroad; that he would get it by the next post and exhibit it as required; a second agent might sell, or offer to sell goods, and say and do likewise towards another officer; a third might do the same thing, and all three might sell, or offer to sell goods, and in a few hours after such sales, each might be able to show the sheriff or other officer the license for "his protection," granted to his employer. But for this requirement of the statute, in view of the railroad connections, it was possible to have so prostituted the license granted to the principal of the defendant as to "protect" one of his possible agents at Raleigh, one at Goldsboro, one at Wilson, one at Rocky Mount, and the defendant at Enfield, for selling goods for their principals in each of the towns named at the same time—each agent in the case supposed, could in the course of a few hours after selling goods, have shown the license to the sheriff or other officer demanding to see the same.

It is not sufficient to say, that it is not probable this would be done; it *might* be done! Nor is it sufficient to say, that agents perpetrating such frauds would probably be detected sooner or later; they might be; in many instances no doubt they would not be. The legislature has deemed it necessary and wise to provide against such opportunities to commit fraud under the statute cited.

The plain purpose of the statute is to require the payment of the taxes imposed by it on persons selling goods by the wholesale with or without samples, and while it is no part of its purpose to restrain or delay the honest merchant from selling his goods, but on the contrary, it is its purpose to encourage and protect him, it undertakes to cut off as far as practicable, the possibility of fraudulent practices of such persons as seek to avoid paying the taxes due the state. It plainly intends that but one person at a time shall use a license; and to secure this, that person is required to have the license in his actual possession at the time he sells or offers to sell goods under it. So that, it is not sufficient to pay the tax and obtain a license to be shown when convenient, but is just as necessary that the person selling goods under the license, shall have it in his actual possession at the time he sells or offers to sell them. If he fails to do this, he incurs the penalty prescribed.

Looking at this case as presented by the record, we are impressed with the belief that the defendant and his principals acted in good faith, but this does not excuse or relieve him from the penalty. He had no right to sell goods as he did without having the license in his actual possession; this was as necessary for "his protection," as the license itself. He ought to have delayed selling the goods until he got actual possession of the license.

The statute does not exempt persons from the penalty who make honest mistakes in cases like this, or make any provision for their relief; it requires all to be circumspect, and

comply with all its requirements, not simply a part of them.

It is said that the statute is a severe and exacting one; with that we have nothing to do; it is our province to expound and apply it in the cases that come before us. We do not doubt that we have properly given effect to the legislative will.

There is error for which the judgment of the superior court of Halifax county must be reversed, and judgment entered here for the plaintiff.

Error. Reversed.